# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUIS A. GRANT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-438 |
| | ) | |
| v. | ) | Judge Cercone |
| | ) | Magistrate Judge Caiazza |
| HURRICANE EQUIPMENT, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. Recommendation

Louis A. Grant, Inc. ("the Plaintiff" or "Grant") filed suit in the District Court alleging, among other things, fraud, misrepresentation, and unjust enrichment. These claims originated with Grant's December 13, 2006 purchase of a Grandall XL 3200 Hydraulic Excavator ("Grandall" or "the Equipment"). Grant purchased the Equipment at an auction conducted by Ritchie Brothers Auctioneers ("Ritchie Brothers."). The Equipment was consigned to Ritchie Brothers on November 21, 2006, by Defendant Hurricane Equipment, Inc. ("the Defendant" or "Hurricane"). Grant alleges that Hurricane purposefully misrepresented the condition of the Grandall and that, as a result, it was harmed. Defendant's Motion to Dismiss for lack of personal jurisdiction (Doc. 27) is pending. It is respectfully recommended that the Motion be granted.

## II. Factual and Procedural Background

Defendant Hurricane is a domestic corporation having a headquarters in Culloden, West Virginia. (Doc. 1). It refurbishes, rehabilitates and sells a variety of heavy equipment. Hurricane is not incorporated in Pennsylvania and does not maintain any office, facility, mailing address or telephone listing in the State. In addition, Hurricane is not licensed or registered to do business in Pennsylvania, nor does it specifically target its marketing or advertising within the Commonwealth. (Doc. 28 at ¶¶ 4-9).

Grant is a domestic corporation with its principal place of business in Export, Pennsylvania. (Doc. 1 at ¶ 1). On or about November 21, 2006, Hurricane entered into a Contract to Auction with Ritchie Brothers. (Doc. 28 at ¶ 10). According to its website (www.rbauction.com), Ritchie Brothers is a multi-national publically traded corporation specializing in unreserved auctions for industrial equipment. Its principal office in the United States is located in Lincoln, Nebraska. According to Ritchie Brothers' procedures, all auctions are conducted live and in person, are open to the public, and all items are awarded to the highest bidder. If, however, an individual or entity is interested in bidding but is unable to attend the auction, Ritchie Brothers has available the capacity for that individual or entity to participate in real time over the Internet. Id.; see

*also* Doc. 33, Exs. A and B.

The November 21st contract between Hurricane and Ritchie Brothers related to a Grandall XL 3200 Hydraulic Excavator. Under the terms of the contract, Hurricane consigned the Equipment to Ritchie Brothers for auction. (Doc. 27, Ex. 1). Through that act, Hurricane relinquished all control over the advertising, marketing and sale of the Equipment. (Doc. 1 at ¶¶ 11-17).

On or about December 13, 2006, Grant, via Ritchie Brothers' website, purchased the Grandall for ninety-seven thousand dollars ($97,000.00) (Doc. 1 at ¶¶ 6-7; *see also* Doc. 27 at ¶¶ 1-2). Though Grant placed its winning bid online, the auction itself was held in the State of Maryland. (Doc. 27 at ¶ 3). Grant contends that, although the consignment contract contains representations by Hurricane, noteably that the Equipment was in "good running order," upon receipt of the Grandall, it was "patently obvious that the Equipment had suffered extensive damage and was unusable." (Doc. 1 at ¶ 15).

Accordingly, on April 3, 2007, Grant filed suit against Hurricane alleging, among other things, fraud, misrepresentation, breach of contract, and unjust enrichment. (Doc. 1). On October 4, 2007, Hurricane filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction (Doc. 27). In response, on November 1, 2007, Grant

filed a Brief in Opposition, contending that under Pennsylvania's long-arm statute, jurisdiction in this case was proper. (Doc. 30). Hurricane's Reply Brief was filed on November 12, 2007. (Doc. 31).

### III. **Standard of Review**

Under Federal Rule of Civil Procedure 4(e), a federal court may assert personal jurisdiction over a non-resident defendant to the extent allowed by the law of the state in which the action is brought.[1] See Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992). Pennsylvania authorizes the exercise of long-arm jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States."[2] 42 Pa. Con. Stat. Ann. § 5322(a)(4); Renner v. Lanard Toys, Ltd., 33 F.3d 277, 279 (3d Cir. 1990); Farino, 960 F.2d at 1221. Accordingly, the statute is restricted only by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

---

[1] Rule 4(e) provides in relevant part:
Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or incompetent person, may be affected in any judicial district of the United States:... (1) pursuant to the law of the state in which the district court is located. Fed. R. Civ. P. 4(e)(1).

[2] Section 5322(a)(4), commonly referred to as the "tort out/harm in" provision, provides in relevant part:
A tribunal of this Commonwealth may exercise personal jurisdiction over a person... who acts directly or by an agent, as to a cause of action or other matter arising from such person:... (4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth. 42 Pa. Con. Stat. Ann.§ 5322 (a)(4).

-4-

Kubik v. Letteri, 532 Pa. 10, 614 A.2d 1110,1113-14 (1992).

Once a jurisdictional issue has been raised, the plaintiff bears the burden of establishing contact sufficient to support the court's exercise of personal jurisdiction. *See* Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007); Provident National Bank v. California Fed. Savings & Loan Assn, 819 F.2d 434, 437 (3d Cir. 1987). Prior to trial, a plaintiff need only make a *prima facie* showing of jurisdiction, and the reviewing court must interpret all facts and allegations in a light most favorable to the plaintiff. Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002). If the plaintiff is able to make out a *prima facie* case for the exercise of personal jurisdiction, the burden shifts to the defendant to show that the extension of jurisdiction is unconstitutional by "present[ing] a compelling case" showing that the exercise of personal jurisdiction would be unreasonable based upon certain "fairness factors." Farino, 960 F.2d at 1226 (quoting Burger King Corp. V. Rudzewicz, 471 U.S. 462, 477 (1985)). These fairness factors include: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. Burger

King, 471 U.S. at 477 (quoting World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 289 (1980)); Pennzoil Products Co. v. Colelli & Associates, Inc., 149 F.3d 197. 207-08 (3d Cir. 1998).

A court may exercise personal jurisdiction based on a defendant's general or specific contacts with the forum state.[3] We look first at the issue of general jurisdiction. Pennsylvania law permits the exercise of general jurisdiction over a corporate defendant when the corporation carries on a "continuous and systematic part of its general business within [Pennsylvania]." 42 Pa. Cons. Stat. Ann. § 5301(a)(2)(iii); *see also* Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). General jurisdiction is based on the defendant's relationship with the forum rather than on particular contacts with the plaintiff. Thus, when a state has general jurisdiction over a party, it may exercise jurisdiction based on any claim, including those unrelated to the party's contacts with the state. Farino, 960 F.2d at 1221.

Specific jurisdiction involves an assertion of personal

---

[3] In its Brief in Support of the within motion (Doc. 29), Hurricane cites to Faust v. Coakley, 2007 U.S. Dist. LEXIS 46999 (W.D. Pa. June 28, 2007) for the proposition that *both* general and specific jurisdiction must be present in order for a court to exercise in *personam* jurisdiction over a non-resident defendant. (Doc. 29 at p. 3). Although the court in Faust did make that statement, the rest of the court's opinion is to the contrary, and, more importantly, consistent with governing case law. It is well-established, as Faust acknowledges, that a finding of *either* general *or* specific jurisdiction is sufficient. See Faust, 2007 U.S. Dist. LEXIS 46999, at *15 (holding "if a plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction...").

-6-

jurisdiction over a defendant "arising out of or related to" defendant's contacts with the forum state. Helicopteros, 466 U.S. at 414, n.8; Mellon Bank (East)PSFS, N.A. v. DiVeronica Bros., Inc., 938 F.2d 551, 554 (3d Cir. 1993). Determining whether specific jurisdiction exists involves a three-part inquiry.[4] First, the plaintiff must show that the defendant has "constitutionally sufficient 'minimum contacts' with the forum state." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 25-59 (3d Cir. 1998)(citing Burger King, 471 U.S. at 474). Second, the plaintiff's claim must "arise out of or relate to those activities." Helicopteros, 466 U.S. at 414. Finally, a reviewing court may consider additional factors to ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting International Show Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310, 316 (1945)).

In order for a court to find that sufficient minimum contacts exist to warrant the assertion of personal jurisdiction,

---

[4] Some Third Circuit Court cases utilize a two-part test, noting that the third prong -a determination of whether exercising jurisdiction would comport with notions of fair play and substantial justice- is discretionary. *See, e.g.*, Pennzoil, 149 F.3d at 201. However, the third prong is almost universally applied, and has even been referred to as "mandatory." *See, e.g.*, Mesalic v. Fiberfloat Corp., 897 F.2d 696, 701 (3d Cir. 1990)("Having determined that there were sufficient minimum contacts, we *must* determine whether the assertion of personal jurisdiction accords with notions of 'fair play and substantial justice.'")(citations omitted)(emphasis added). Accordingly, and because more recent case law requires it, our analysis in this case employs a three-part inquiry.

there must be "some act by which the defendant purposefully avails itself of the privilege of conducting business within the forum state, thus invoking the benefits and protections of its laws." Farino, 960 F.2d at 1221 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). These acts must be "such that [the defendant] should reasonably anticipate being haled into court [in the forum state]." World-Wide Volkswagon, 444 U.S. at 297. This test is intended to protect a non-resident defendant from jurisdiction based on contacts that are "random, fortuitous," or "attenuated," or that result from the unilateral activity of another party or a third person. Burger King, 471 U.S. at 475 (citations omitted).

## IV. **Analysis**

As a threshold matter, it is undisputed that the facts of this case fall within the statute. However, although we conclude that Pennsylvania's long-arm statute applies to Hurricane, we must still decide whether the strictures of constitutional due process (*i.e.*, minimum contacts and notions of "fair play and substantial justice") would be observed by exercising jurisdiction. A court should not presume that jurisdiction is proper merely because the requirements of a state's long-arm statue have been satisfied. Pennzoil, 149 F.3d at 201.

We turn next to the issues of general and specific personal jurisdiction. Grant does not argue that this Court has general

jurisdiction over Defendant Hurricane. Accordingly, this Court is only concerned with whether it has specific jurisdiction. *See* Pennzoil, 149 F.3d at 200-01 ("[N]o party in this case contends that there is a basis for general jurisdiction in Pennsylvania - so we are free to consider solely whether the alternative form of jurisdiction is present: specific personal jurisdiction.").

Grant asserts that specific jurisdiction over Hurricane is proper under the "stream of commerce" theory. (Doc. 30 at p. 7). Under this theory, "a forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." World-Wide Volkswagon, 444 U.S. at 297-98; *see also*, Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102, 107 (1987); Renner, 33 F.3d at 279. In other words, if the defendant, through the chain of distribution, arranged for its product to find its way to the forum state, then minimum contacts sufficient for a court to exercise specific jurisdiction over the defendant would exist.

In Asahi the Supreme Court attempted to clarify certain elements of jurisdiction based upon the stream of commerce theory. As the Third Circuit Court discussed at length in Pennzoil, the Justices were divided on the level of minimum contacts necessary for a finding of jurisdiction under the

theory. Pennzoil, 149 F.3d at 204-05. Justice O'Connor, writing for a plurality of four, concluded that simply placing a product in the stream of commerce was insufficient. Rather, placement must be accompanied by some "additional conduct of the defendant [that] may indicate an intent or purpose to serve the market in the forum state." Id. at 204 (internal citations omitted).[5] In contrast, Justice Brennan, writing for another plurality of four, disagreed that any "additional conduct" was necessary. Instead, he wrote that "as long as a participant in this process is aware that the final product is being marketed in the forum state, the possibility of a lawsuit there cannot come as a surprise." Id. (internal citations omitted). Finally, Justice Stevens wrote a short concurring opinion in which he rejected the plurality's assumption that "an unwavering line can be drawn between mere awareness that the component will find its way into the forum state, and purposeful availment of the forum's market." Id. at 122. He concluded that whether or not a defendant's conduct rises to the level of purposeful availment "requires a constitutional determination that is affected by the volume, the value, and the

---

[5] Justice O'Connor offered four examples of potential additional conduct: (1) designing the product for the forum state; (2) advertising in the forum state; (3) establishing channels to provide regular customer advice in the forum state; or (4) marketing the product through a distributor who has agreed to serve as the sales agent there. Asahi, 480 U.S. at 113.

hazardous character of the components." Id.[6]

Obviously, Asahi failed to erect any bright-line guideposts, and the Supreme Court has yet to revisit the issue. Some Courts of Appeals have adopted one of the conflicting conceptions of minimum contacts via the stream of commerce. *Compare* Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 683 (1st Cir. 1992)(adopting Justice O'Connor's Asahi opinion); Madara v. Hall, 916 F.2d 1510, 1519 (11th Cir. 1990)(same); Fortis Corporate Ins. v. Viken Ship Mgmt., 450 F.3d 214, 220 (6th Cir. 2000)(same); with Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 613-15 (8th Cir. 1994)(adopting a position consistent with that of Justice Brennan); Luv n' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 470 (6th Cir. 2006)(same). Other courts, however, have chosen to avoid a definitive stance on the issue, attempting –when possible– to decide a case on the basis of the facts on the record. *See, e.g.*, Beverley Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1566 (Fed. Cir. 1994); Shute v. Carnival Cruise Lines, 897 F.2d 377, 382 n.3 (9th Cir. 1990); Jennings v. AC Hydraulic A/S, 383 F.3d 546, 551 n.2 (7th Cir. 2004). The Third Circuit Court is among the latter group of courts, having not yet ruled on which approach it will adopt. *See* Renner, 33

---

[6] "Justice Stevens' approach is not as commonly used as Justice O'Connor's and Justice Brennan's approaches although the distinction between Justice O'Connor's and Justice Stevens' approaches is a subtle one." Renner, 33 F.3d at 282.

F.3d at 282-83 (declining to chose between Justice O'Connor's and Justice Brennan's plurality, while not considering Justice Stevens'); Pennzoil, 149 F.3d at 206-07 (applying both standards to the facts of the case).

In its first argument, Grant alleges that Hurricane's equipment entered Pennsylvania through a chain of distribution and that Hurricane foresaw, or should have foreseen this. (Doc. 30 at p. 8). This fact alone is insufficient to exercise personal jurisdiction under any of the stream of commerce tests as delineated in Asahi. "[T]he mere foreseeability that a product one sells may end up in the forum state" does not render the seller amenable to suit in the forum state. Renner, 33 F.3d at 279 (quoting World-Wide Volkswagon, 444 U.S. at 295). Rather, a finding of minimum contacts requires the demonstration of "some act by which the defendant purposefully availed itself of the privilege of conducting business within the forum state." Farino, 960 F.2d at 1221 (citations omitted).

Second, the Plaintiff alleges that Hurricane's utilization of Ritchie Brothers' online auction services constitutes purposeful availment because Hurricane does not "deny ample knowledge of Ritchie Brothers wide geographical sales range." (Doc. 30 at p. 8). This argument, likewise, is flawed. To begin, the characterization of Ritchie Brothers' auction as being

"online" is disputed.[7] However, even if we accept Ritchie Brothers' auction as an "online auction" – as we must– Grant's argument still fails. Although the Third Circuit Court has not yet directly addressed the issue, many of its sister jurisdictions have declined to extend personal jurisdiction to a defendant on the basis of sales or purchases made through an online auction, such as those hosted on eBay, because there are insufficient minimum contacts. Central to these holdings was the concept of control over the auction at issue.[8] In this case, once Hurricane consigned the Grandall to Ritchie Brothers, it relinquished control over the Equipment. Similarly, Ritchie Brothers, not Hurricane, maintained control over the location and terms of the auction, marketing and advertising of any and all items for sale, the withdrawal of items for sale, and the approval and acceptance of all bids. (Doc. 28). Not only does

---

[7] Hurricane asserts that Ritchie Brothers auction was actually held live and in person in Maryland. (Doc. 31 at p. 5). Any bids submitted via the internet were routed through Ritchie Brothers' central computer serves to an "Internet ringman" at the live auction, who in turn signaled the auctioneer that a bid had been placed. Id.

[8] *See, e.g.*, Machulsky v. Hall, 210 F. Supp.2d 531, 541-42 (D.N.J. July 9, 2002)("...[defendant] engaged in only one commercial transaction via eBay and this single purchase, without more, is not s sufficient premise upon which the court can exercise personal jurisdiction."); Boschetto v. Hansing, 2006 U.S. Dist. LEXIS 29312, *4 (N.D. Cal. July 13, 2006)("Auction sales on eBay are random and attenuated, and the choice of [the] highest bidder is...beyond the control of the seller."); United Cutlery Corp. v. NFZ, Inc., 2003 U.S. Dist. LEXIS 21664, *4 (D. Md. Dec. 1, 2003)("Defendant exercised no authority over the maintenance of the websites, nor did he exert control over the audience they targeted. Given this lack of control, the court finds no evidence that [defendant] directed electronic activity into [the forum state].").

Hurricane's one sale not constitute sufficient minimum contacts with Pennsylvania, it lacked the requisite level of control and intent by which this court could conclude that it purposefully availed itself to the privilege of doing business within the State. Finally, Grant argues that Hurricane should be subjected to this Court's jurisdiction based upon its classified listings on certain websites which are accessible to Internet users in Pennsylvania. (Doc. 30 at p. 9).

Further, Grant claims that Hurricane directly targets potential customers in this state. Id. A leading case regarding personal jurisdiction based on a website is Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. Jan. 16, 1997), in which the district court established a sliding scale test, finding personal jurisdiction to be appropriate when the website was "interactive" but not when the site was "passive." Id. at 1124. The court explained:

> This sliding scale is consistent with well-developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet website which is accessible to users in foreign jurisdictions. A passive website that does little more than make information available to those who are interested in it is not grounds for the

> exercise of personal jurisdiction. The
> middle ground is occupied by interactive
> websites where a user can exchange
> information with the host computer. In these
> cases, the exercise of jurisdiction is
> determined by examining the level of
> interactivity and commercial exchange of
> information that occurs on the website.

Id. (internal citation omitted).

Moreover, it is well-established that the "mere operation of a commercially interactive website" is not by itself a sufficient basis for jurisdiction anywhere the site can be viewed. Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454 (3d Cir. 2003). Instead, operating a website is akin to advertising in a national publication which is generally insufficient, without more, to establish personal jurisdiction. *See* Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 106 (3d Cir. 2004). For a court to exercise jurisdiction on the basis of Internet sales, there must be "evidence that the defendant 'purposely availed' itself of conducting activity in the forum state, by directly targeting its website to the state, [or] knowingly interacting with residents of the forum state via its website. . . ." Toys "R" Us, 318 F.3d at 454.

The Hurricane website is not highly interactive, and users can only initiate contact through an email link. *See generally*, www.hurricaneequipmentcompany.com. Potential customers are able to view pictures of available equipment, but there is no transaction, purchase or sale that can be consummated by means of

-15-

the website. Under the Zippo analysis, the website is not sufficiently interactive to support a finding of personal jurisdiction.

In addition, there is no connection between the website and the cause of action here. The website does not demonstrate a "conscious choice to conduct business with the residents" of Pennsylvania and "intentionally interact with [Pennsylvanians] via the website in order to show purposeful availment. . . ." Toys "R" Us, 318 F.3d at 446. Significantly, the website is not targeted specifically to reach Pennsylvanians. Molnycke Health Care AB v. Dumex Med. Surgical Prods Ltd., 64 F. Supp.2d 448, 448 (E.D. Pa. Sept. 8, 1999). No sales are directly conducted by means of the site. Users cannot link to a specific sales representative for Pennsylvania, but instead are routed to Hurricane's headquarters in West Virginia. The phrase "Serving the Tri-State Area for More than 50 Years" and Hurricane's geographical proximity to Pennsylvania are insufficient to overcome the "passive" nature of the website. The capabilities that are offered, *i.e.*, the ability to send an email to Hurricane headquarters and to view product lines, do not warrant the extension of personal jurisdiction.

In short, all of the facts provided by Grant are insufficient -individually and collectively- to make out a *prima facie* case for the exercise of personal jurisdiction over

Hurricane. Because Grant has failed to meet its burden, the Court need not determine whether Hurricane has shown that the extension of personal jurisdiction would violate notions of "fair play and substantial justice."

## V. Conclusion

For all of the reasons set out in this Report, it is respectfully recommended that the Defendant's Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(2) be **GRANTED**.


In accordance with the Magistrate's Act, 29 U.S.C. § 636(b)(1)(B), 636(b)(1)(b) and (c), and Rule 72.1.4(B) of the Local Rules for Magistrates, objections to the Report and Recommendation are due by March 3, 2008. Responses to objections are due by March 13, 2008.

S/ Francis X. Caiazza  
Francis X. Caiazza  
U. S. Magistrate Judge

cc:
Frank G. Murphy, Esq.
Frey Petrakis Deeb Blum & Briggs, P.C.
1601 Market Street, Suite 2600
Philadelphia, PA 19103

Holly M. Whalen, Esq.
Dennis A. Watson, Esq.
Grogan Graffman, P.C.
Four Gateway Center, 12th Floor
Pittsburgh, PA 15222